**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-4250
_____

D. C. Docket No. 92-2108-CIV

MCC-MARBLE CERAMIC CENTER, INC.,

Plaintiff-Counter-Defendant-Appellant,

versus

CERAMICA NUOVA D'AGOSTINO, S.P.A.,

Defendant-Counter-Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(June 29, 1998)**

Before EDMONDSON and BIRCH, Circuit Judges and FAY, Senior Circuit Judge.

BIRCH, Circuit Judge:

This case requires us to determine whether a court must consider parol evidence in a contract dispute governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG").[1] The district court granted summary judgment on behalf of the defendant-appellee, relying on certain terms and provisions that appeared on the reverse of a pre-printed form contract for the sale of ceramic tiles. The plaintiff-appellant sought to rely on a number of affidavits that tended to show both that the parties had arrived at an oral contract before memorializing their agreement in writing and that they subjectively intended not to apply the terms on the reverse of the contract to their agreements. The magistrate judge held that the affidavits did not raise an issue of material fact and recommended that the district court grant summary judgment based on the terms of the contract. The district court agreed with

---

[1] United Nations Convention on Contracts for the International Sale of Goods, *opened for signature* April 11, 1980, S. Treaty Doc. No. 9, 98th Cong., 1st Sess. 22 (1983), 19 I.L.M. 671, reprinted at, 15 U.S.C. app. 52 (1997).

2

the magistrate judge's reasoning and entered summary judgment in the defendant-appellee's favor. We REVERSE.

## BACKGROUND

The plaintiff-appellant, MCC-Marble Ceramic, Inc. ("MCC"), is a Florida corporation engaged in the retail sale of tiles, and the defendant-appellee, Ceramica Nuova d'Agostino S.p.A. ("D'Agostino") is an Italian corporation engaged in the manufacture of ceramic tiles. In October 1990, MCC's president, Juan Carlos Mozon, met representatives of D'Agostino at a trade fair in Bologna, Italy and negotiated an agreement to purchase ceramic tiles from D'Agostino based on samples he examined at the trade fair. Monzon, who spoke no Italian, communicated with Gianni Silingardi, then D'Agostino's commercial director, through a translator, Gianfranco Copelli, who was himself an agent of D'Agostino.[2] The

---

[2] Since this case is before us on summary judgment, we consider the facts in the light most favorable to MCC, the non-moving party, and grant MCC the benefit of every factual inference. See Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

parties apparently arrived at an oral agreement on the crucial terms of price, quality, quantity, delivery and payment. The parties then recorded these terms on one of D'Agostino's standard, pre-printed order forms and Monzon signed the contract on MCC's behalf. According to MCC, the parties also entered into a requirements contract in February 1991, subject to which D'Agostino agreed to supply MCC with high grade ceramic tile at specific discounts as long as MCC purchased sufficient quantities of tile. MCC completed a number of additional order forms requesting tile deliveries pursuant to that agreement.

MCC brought suit against D'Agostino claiming a breach of the February 1991 requirements contract when D'Agostino failed to satisfy orders in April, May, and August of 1991. In addition to other defenses, D'Agostino responded that it was under no obligation to fill MCC's orders because MCC had defaulted on payment for previous shipments. In support of its position, D'Agostino relied on the pre-printed terms of the contracts that MCC had executed. The

4

executed forms were printed in Italian and contained terms and conditions on both the front and reverse. According to an English translation of the October 1990 contract,[3] the front of the order form contained the following language directly beneath Monzon's signature:

> [T]he buyer hereby states that he is aware of the sales conditions stated on the reverse and that he expressly approves of them with special reference to those numbered 1-2-3-4-5-6-7-8.

R2-126, Exh. 3 ¶ 5 ("Maselli Aff."). Clause 6(b), printed on the back of the form states:

> [D]efault or delay in payment within the time agreed upon gives D'Agostino the right to . . . suspend or cancel the contract itself and to cancel possible other pending contracts and the buyer does not have the right to indemnification or damages.

Id. ¶ 6.

D'Agostino also brought a number of counterclaims against MCC, seeking damages for MCC's alleged nonpayment for

---

[3] D'Agostino provided the translation of the contract. MCC has never contested its accuracy.

5

deliveries of tile that D'Agostino had made between February 28, 1991 and July 4, 1991. MCC responded that the tile it had received was of a lower quality than contracted for, and that, pursuant to the CISG, MCC was entitled to reduce payment in proportion to the defects.[4] D'Agostino, however, noted that clause 4 on the reverse of the contract states, in pertinent part:

> Possible complaints for defects of the merchandise must be made in writing by means of a certified letter within and not later than 10 days after receipt of the merchandise . . . .

Maselli Aff. ¶ 6. Although there is evidence to support MCC's claims that it complained about the quality of the deliveries it received, MCC never submitted any written complaints.

MCC did not dispute these underlying facts before the district court, but argued that the parties never intended the terms and conditions printed on the reverse of the order form to apply to their agreements. As evidence for this assertion, MCC submitted

---

[4] Article 50 of the CISG permits a buyer to reduce payment for nonconforming goods in proportion to the nonconformity under certain conditions. See CISG, art. 50.

Monzon's affidavit, which claims that MCC had no subjective intent to be bound by those terms and that D'Agostino was aware of this intent. MCC also filed affidavits from Silingardi and Copelli, D'Agostino's representatives at the trade fair, which support Monzon's claim that the parties subjectively intended not to be bound by the terms on the reverse of the order form. The magistrate judge held that the affidavits, even if true, did not raise an issue of material fact regarding the interpretation or applicability of the terms of the written contracts and the district court accepted his recommendation to award summary judgment in D'Agostino's favor. MCC then filed this timely appeal.

## DISCUSSION

We review a district court's grant of summary judgment <u>de novo</u> and apply the same standards as the district court. <u>See</u> <u>Harris v. H&W Contracting Co.</u>, 102 F.3d 516, 518 (11th Cir. 1996). Summary judgment is appropriate when the pleadings, depositions,

and affidavits reveal that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).

The parties to this case agree that the CISG governs their dispute because the United States, where MCC has its place of business, and Italy, where D'Agostino has its place of business, are both States Party to the Convention.[5]  See CISG, art. 1.[6]  Article 8 of the CISG governs the interpretation of international contracts for the sale of goods and forms the basis of MCC's appeal from the district court's grant of summary judgment in D'Agostino's favor.[7]

---

[5]  The United States Senate ratified the CISG in 1986, and the United States deposited its instrument of ratification at the United Nations Headquarters in New York on December 11, 1986.  See Preface to Convention, reprinted at 15 U.S.C. app. 52 (1997).  The Convention entered into force between the United States and the other States Parties, including Italy, on January 1, 1988.  See id.; Filanto S.p.A. v. Chilewich Int'l Corp., 789 F. Supp. 1229, 1237 (S.D.N.Y. 1992).

[6]  Article 1 of the CISG states in relevant part:
(1) This Convention applies to contracts of sale of goods between parties whose places of business are in different States:
       (a) When the States are Contracting States . . . .
CISG, art. 1.

[7]  Article 8 provides:
(1) For the purposes of this Convention statements made by and other conduct of a party are to be interpreted according to his intent where the other party knew or

MCC argues that the magistrate judge and the district court improperly ignored evidence that MCC submitted regarding the parties' subjective intent when they memorialized the terms of their agreement on D'Agostino's pre-printed form contract, and that the magistrate judge erred by applying the parol evidence rule in derogation of the CISG.

## I.    Subjective Intent Under the CISG

Contrary to what is familiar practice in United States courts, the CISG appears to permit a substantial inquiry into the parties' subjective intent, even if the parties did not engage in any objectively

---

could not have been unaware what that intent was.

(2) If the preceding paragraph is not applicable, statements made by and conduct of a party are to be interpreted according to the understanding a reasonable person of the same kind as the other party would have had in the same circumstances.

(3) In determining the intent of a party or the understanding a reasonable person would have had, due consideration is to be given to all relevant circumstances of the case including the negotiations, any practices which the parties have established between themselves, usages and any subsequent conduct of the parties.

CISG, art. 8.

ascertainable means of registering this intent.[8]  Article 8(1) of the CISG instructs courts to interpret the "statements . . . and other conduct of a party . . . according to his intent" as long as the other party "knew or could not have been unaware" of that intent.  The plain language of the Convention, therefore, requires an inquiry into a party's subjective intent as long as the other party to the contract was aware of that intent.

In this case, MCC has submitted three affidavits that discuss the purported subjective intent of the parties to the initial agreement concluded between MCC and D'Agostino in October 1990.  All three

---

[8]  In the United States, the legislatures, courts, and the legal academy have voiced a preference for relying on objective manifestations of the parties' intentions.  For example, Article Two of the Uniform Commercial Code, which most states have enacted in some form or another to govern contracts for the sale of goods, is replete with references to standards of commercial reasonableness.  See e.g., U.C.C. § 2-206 (referring to reasonable means of accepting an offer); see also Lucy v. Zehmer, 196 Va. 493, 503, 84 S.E.2d 516, 522 (1954) ("Whether the writing signed . . . was the result of a serious offer . . . and a serious acceptance . . . , or was a serious offer . . . and an acceptance in secret jest . . . , in either event it constituted a binding contract of sale between the parties.").  Justice Holmes expressed the philosophy behind this focus on the objective in forceful terms: "The law has nothing to do with the actual state of the parties' minds.  In contract, as elsewhere, it must go by externals, and judge parties by their conduct."  Oliver W. Holmes, The Common Law 242 (Howe ed. 1963) quoted in John O. Honnold, Uniform Law for International Sales under the 1980 United Nations Convention § 107 at 164 (2d ed. 1991) (hereinafter Honnold, Uniform Law).

10

affidavits discuss the preliminary negotiations and report that the parties arrived at an oral agreement for D'Agostino to supply quantities of a specific grade of ceramic tile to MCC at an agreed upon price. The affidavits state that the "oral agreement established the essential terms of quality, quantity, description of goods, delivery, price and payment." See R3-133 ¶ 9 ("Silingardi Aff."); R1-51 ¶ 7 ("Copelli Aff."); R1- 47 ¶ 7 ("Monzon Aff."). The affidavits also note that the parties memorialized the terms of their oral agreement on a standard D'Agostino order form, but all three affiants contend that the parties *subjectively* intended not to be bound by the terms on the reverse of that form despite a provision directly below the signature line that expressly and specifically incorporated those terms.[9]

---

[9]  MCC makes much of the fact that the written order form is entirely in Italian and that Monzon, who signed the contract on MCC's behalf directly below this provision incorporating the terms on the reverse of the form, neither spoke nor read Italian. This fact is of no assistance to MCC's position. We find it nothing short of astounding that an individual, purportedly experienced in commercial matters, would sign a contract in a foreign language and expect not to be bound simply because he could not comprehend its terms. We find nothing in the CISG that might counsel this type of reckless behavior and nothing that signals any retreat from the proposition that parties who sign contracts will be bound by them

11

The terms on the reverse of the contract give D'Agostino the right to suspend or cancel all contracts in the event of a buyer's non-payment and require a buyer to make a written report of all defects within ten days. As the magistrate judge's report and recommendation makes clear, if these terms applied to the agreements between MCC and D'Agostino, summary judgment would be appropriate because MCC failed to make any written complaints about the quality of tile it received and D'Agostino has established MCC's non-payment of a number of invoices amounting to $108,389.40 and 102,053,846.00 Italian lira.

Article 8(1) of the CISG requires a court to consider this evidence of the parties' subjective intent. Contrary to the magistrate judge's report, which the district court endorsed and adopted, article 8(1) does not focus on interpreting the parties' statements alone.

---

regardless of whether they have read them or understood them. <u>See e.g.</u>, <u>Samson Plastic Conduit and Pipe Corp. v. Battenfeld Extrusionstechnik GMBH</u>, 718 F. Supp. 886, 890 (M.D. Ala. 1989) ("A good and recurring illustration of the problem . . . involves a person who is . . . unfamiliar with the language in which a contract is written and who has signed a document which was not read to him. There is all but unanimous agreement that he is bound . . . . ")

12

Although we agree with the magistrate judge's conclusion that no "interpretation" of the contract's *terms* could support MCC's position,[10] article 8(1) also requires a court to consider subjective intent while interpreting the *conduct* of the parties. The CISG's language, therefore, requires courts to consider evidence of a party's subjective intent when signing a contract if the other party to the contract was aware of that intent at the time. This is precisely the type of evidence that MCC has provided through the Silingardi, Copelli, and Monzon affidavits, which discuss not only Monzon's intent as MCC's representative but also discuss the intent of D'Agostino's representatives and their knowledge that Monzon did not intend to agree to the terms on the reverse of the form contract. This acknowledgment that D'Agostino's representatives were aware of Monzon's subjective intent puts this case squarely within article

---

[10] The magistrate judge's report correctly notes that MCC has not sought an interpretation of those terms, but rather to exclude them altogether. We agree that such an approach "would render terms of written contracts virtually meaningless and severely diminish the reliability of commercial contracts." R2-102 at 5-6.

13

8(1) of the CISG, and therefore requires the court to consider MCC's evidence as it interprets the parties' conduct.[11]

## II.  Parol Evidence and the CISG

Given our determination that the magistrate judge and the district court should have considered MCC's affidavits regarding the parties' subjective intentions, we must address a question of first impression in this circuit:  whether the parol evidence rule, which bars evidence of an earlier oral contract that contradicts or varies the terms of a subsequent or contemporaneous written contract,[12] plays

---

[11]  Without this crucial acknowledgment, we would interpret the contract and the parties' actions according to article 8(2), which directs courts to rely on objective evidence of the parties' intent.  On the facts of this case it seems readily apparent that MCC's affidavits provide no evidence that Monzon's actions would have made his alleged subjective intent not to be bound by the terms of the contract known to "the understanding that a reasonable person . . . would have had in the same circumstances."  CISG, art 8(2).

[12]  The Uniform Commercial Code includes a version of the parol evidence rule applicable to contracts for the sale of goods in most states:
> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

14

any role in cases involving the CISG. We begin by observing that the parol evidence rule, contrary to its title, is a substantive rule of law, not a rule of evidence. See II E. Allen Farnsworth, <u>Farnsworth on Contracts</u>, § 7.2 at 194 (1990). The rule does not purport to exclude a particular type of evidence as an "untrustworthy or undesirable" way of proving a fact, but prevents a litigant from attempting to show "the fact itself—the fact that the terms of the agreement are other than those in the writing." <u>Id.</u> As such, a federal district court cannot simply apply the parol evidence rule as a procedural matter—as it might if excluding a particular type of evidence under the Federal Rules of Evidence, which apply in federal court regardless of the source of the substantive rule of decision. <u>Cf. id.</u> § 7.2 at 196.[13]

_____

```
       (a) by course of dealing or usage of trade . . . or
       by course of performance . . . ; and
       (b) by evidence of consistent additional terms
       unless the court finds the writing to have been
       intended also as a complete and exclusive statement
       of the terms of the agreement.
```

U.C.C. § 2-202.

[13] An example demonstrates this point. The CISG provides that a contract for the sale of goods need not be in writing and that

The CISG itself contains no express statement on the role of parol evidence. See Honnold, Uniform Law § 110 at 170. It is clear, however, that the drafters of the CISG were comfortable with the concept of permitting parties to rely on oral contracts because they eschewed any statutes of fraud provision and expressly provided for the enforcement of oral contracts. Compare CISG, art. 11 (a contract of sale need not be concluded or evidenced in writing) with U.C.C. § 2-201 (precluding the enforcement of oral contracts for the sale of goods involving more than $500). Moreover, article 8(3) of the CISG expressly directs courts to give "due consideration . . . to all relevant circumstances of the case including the negotiations . . ." to determine the intent of the parties. Given article 8(1)'s directive to use the intent of the parties to interpret their statements and

---

the parties may prove the contract "by any means, including witnesses." CISG, art. 11. Nevertheless, a party seeking to prove a contract in such a manner in federal court could not do so in a way that violated in the rule against hearsay. See Fed. R. Evid. 802 (barring hearsay evidence). A federal district court applies the Federal Rules of Evidence because these rules are considered procedural, regardless of the source of the law that governs the substantive decision. Cf. Farnsworth on Contracts § 7.2 at 196 & n. 16 (citing cases).

16

conduct, article 8(3) is a clear instruction to admit and consider parol evidence regarding the negotiations to the extent they reveal the parties' subjective intent.

Despite the CISG's broad scope, surprisingly few cases have applied the Convention in the United States,[14] see Delchi Carrier SpA v. Rotorex Corp., 71 F.3d 1024, 1027-28 (2d Cir. 1995) (observing that "there is virtually no case law under the Convention"), and only two reported decisions touch upon the parol evidence rule, both in dicta. One court has concluded, much as we have above, that the parol evidence rule is not viable in CISG cases in light of article 8 of the Convention. In Filanto, a district court addressed the differences between the UCC and the CISG on the issues of offer and acceptance and the battle of the forms. See 789 F. Supp. at 1238. After engaging in a thorough analysis of how the CISG applied to the dispute before it, the district court tangentially

---

[14] Moreover, the parties have not cited us to any persuasive authority from the courts of other States Party to the CISG. Our own research uncovered a promising source for such decisions at <http://www.cisg.law.pace.edu>, but produced no cases that address the issue of parol evidence.

observed that article 8(3) "essentially rejects . . . the parol evidence rule." Id. at 1238 n.7. Another court, however, appears to have arrived at a contrary conclusion. In Beijing Metals & Minerals Import/Export Corp. v. American Bus. Ctr., Inc., 993 F.2d 1178 (5th Cir. 1993), a defendant sought to avoid summary judgment on a contract claim by relying on evidence of contemporaneously negotiated oral terms that the parties had not included in their written agreement. The plaintiff, a Chinese corporation, relied on Texas law in its complaint while the defendant, apparently a Texas corporation,[15] asserted that the CISG governed the dispute. Id. at 1183 n.9. Without resolving the choice of law question,[16] the Fifth

---

[15] The Beijing Metals opinion does not state the place of the defendant's incorporation, but the defendant must have been a United States corporation because the court noted that the case was a "diversity action." Beijing Metals, 993 F.2d at 1183 n.9. Cf. 28 U.S.C. § 1332 (providing no statutory grant for suits between aliens unless a citizen of a State is present); 15 James W. Moore, Moore's Federal Practice § 102.77 (3d ed. 1998) (observing that diversity jurisdiction is not present in suits between two foreign citizens).

[16] The Fifth Circuit unwittingly may have solved the problem in the very next footnote, where it observed that the agreement between the parties, which attempted to settle a dispute regarding an earlier sales contract, was not itself a contract for the sale of goods and therefore fell outside the Uniform Commercial Code. Beijing Metals, 993 F.2d at 1183 n.10. See CISG, art. 1(1) ("This Convention applies to contracts of sale of    goods . . . .")

Circuit cited Filanto for the proposition that there have been very few reported cases applying the CISG in the United States, and stated that the parol evidence rule would apply regardless of whether Texas law or the CISG governed the dispute. Beijing Metals, 993 F.2d at 1183 n.9. The opinion does not acknowledge Filanto's more applicable dictum that the parol evidence rule does not apply to CISG cases nor does it conduct any analysis of the Convention to support its conclusion. In fact, the Fifth Circuit did not undertake to interpret the CISG in a manner that would arrive at a result consistent with the parol evidence rule but instead explained that it would apply the rule as developed at Texas common law. See id. at 1183 n.10. As persuasive authority for this court, the Beijing Metals opinion is not particularly persuasive on this point.

Our reading of article 8(3) as a rejection of the parol evidence rule, however, is in accordance with the great weight of academic commentary on the issue. As one scholar has explained:

---

(emphasis added).

19

> [T]he language of Article 8(3) that "due consideration is to be given to *all relevant* circumstances of the case" seems adequate to override any domestic rule that would bar a tribunal from considering the relevance of other agreements. . . . Article 8(3) relieves tribunals from domestic rules that might bar them from "considering" any evidence between the parties that is relevant. This added flexibility for interpretation is consistent with a growing body of opinion that the "parol evidence rule" has been an embarrassment for the administration of modern transactions.

Honnnold, Uniform Law § 110 at 170-71.[17]  Indeed, only one commentator has made any serious attempt to reconcile the parol evidence rule with the CISG.  See David H. Moore, Note, The Parol

---

[17]  See also Louis F. Del Duca, et al., Sales Under the Uniform Commercial Code and the Convention on International Sale of Goods, 173-74 (1993); Henry D. Gabriel, A Primer on the United Nations Convention on the International Sale of Goods: From the Perspective of the Uniform Commercial Code, 7 Ind. Int'l & Comp. L. Rev. 279, 281 (1997) ("Subjective intent is given primary consideration . . . . [Article 8] allows open-ended reliance on parol evidence . . . ."); Herbert Berstein & Joseph Lookofsky, Understanding the CISG in Europe 29 (1997) ("[T]he CISG has dispensed with the parol evidence rule which might otherwise operate to exclude extrinsic evidence under the law of certain Common Law countries."); Harry M. Fletchner, Recent Developments: CISG, 14 J.L. & Com. 153, 157 (1995) (criticizing the Beijing Metals opinion and noting that "[c]ommentators generally agree that article 8(3) rejects the approach to the parol evidence questions taken by U.S. domestic law.") (collecting authority); John E. Murray, Jr., An Essay on the Formation of Contracts and Related Matters Under the United Nations Convention on Contracts for the International Sale of Goods, 8 J.L. & Com. 11, 12 (1988) ("We are struck by a new world where there is . . . no parol evidence rule, among other differences."); Peter Winship, Domesticating International Commercial Law: Revising U.C.C. Article 2 in Light of the United Nations Sales Convention, 37 Loy. L. Rev. 43, 57 (1991).

Evidence Rule and the United Nations Convention on Contracts for the International Sale of Goods: Justifying Beijing Metals & Minerals Import/Export Corp. v. American Business Center, Inc., 1995 BYU L. Rev. 1347. Moore argues that the parol evidence rule often permits the admission of evidence discussed in article 8(3), and that the rule could be an appropriate way to discern what consideration is "due" under article 8(3) to evidence of a parol nature. Id. at 1361-63. He also argues that the parol evidence rule, by limiting the incentive for perjury and pleading prior understandings in bad faith, promotes good faith and uniformity in the interpretation of contracts and therefore is in harmony with the principles of the CISG, as expressed in article 7.[18] Id. at 1366-70. The answer to both these arguments, however, is the same: although jurisdictions in the

---

[18] Article 7 of the CISG provides in pertinent part:
(1) In the interpretation of this Convention, regard is to be had to its international character and to the need to promote uniformity in its application and the observance of good faith in international trade.

(2) Questions concerning matters governed by this Convention which are not expressly settled in it are to be settled in conformity with the general principles on which it is based . . . .
CISG, art. 7.

United States have found the parol evidence rule helpful to promote good faith and uniformity in contract, as well as an appropriate answer to the question of how much consideration to give parol evidence, a wide number of other States Party to the CISG have rejected the rule in their domestic jurisdictions.  One of the primary factors motivating the negotiation and adoption of the CISG was to provide parties to international contracts for the sale of goods with some degree of certainty as to the principles of law that would govern potential disputes and remove the previous doubt regarding which party's legal system might otherwise apply.  See  Letter of Transmittal from Ronald Reagan, President of the United States, to the United States Senate, reprinted at 15 U.S.C. app. 70, 71 (1997). Courts applying the CISG cannot, therefore, upset the parties' reliance on the Convention by substituting familiar principles of domestic law when the Convention requires a different result.  We may only achieve the directives of good faith and uniformity in contracts under the CISG by interpreting and applying the plain

22

language of article 8(3) as written and obeying its directive to consider this type of parol evidence.

This is not to say that parties to an international contract for the sale of goods cannot depend on written contracts or that parol evidence regarding subjective contractual intent need always prevent a party relying on a written agreement from securing summary judgment. To the contrary, most cases will not present a situation (as exists in this case) in which both parties to the contract acknowledge a subjective intent not to be bound by the terms of a pre-printed writing. In most cases, therefore, article 8(2) of the CISG will apply, and objective evidence will provide the basis for the court's decision. See Honnold, Uniform Law § 107 at 164-65. Consequently, a party to a contract governed by the CISG will not be able to avoid the terms of a contract and force a jury trial simply by submitting an affidavit which states that he or she did not have the subjective intent to be bound by the contract's terms. Cf. Klopfenstein v. Pargeter, 597 F.2d 150, 152 (9th Cir. 1979)

(affirming summary judgment despite the appellant's submission of his own affidavit regarding his subjective intent: "Undisclosed, subjective intentions are immaterial in [a] commercial transaction, especially when contradicted by objective conduct. Thus, the affidavit has no legal effect even if its averments are accepted as wholly truthful."). Moreover, to the extent parties wish to avoid parol evidence problems they can do so by including a merger clause in their agreement that extinguishes any and all prior agreements and understandings not expressed in the writing.[19]

Considering MCC's affidavits in this case, however, we conclude that the magistrate judge and the district court improperly granted summary judgment in favor of D'Agostino. Although the affidavits are, as D'Agostino observes, relatively conclusory and

---

[19] See Ronald A. Brand & Harry M. Fletchner, Arbitration and Contract Formation in International Trade: First Interpretations of the U.N. Sales Convention, 12 J.L. & Com. 239, 252 (1993) (arguing that article 8(3) of the CISG will not permit the consideration of parol evidence when the parties have expressly excluded oral modifications of the contract pursuant to article 29); see also I Albert Kritzer, Guide to Practical Applications of the United Nations Convention on Contracts for the International Sale of Goods 125 (1989) (counseling the use of a merger clause to compensate for the absence of a parol evidence rule in the CISG).

unsupported by facts that would *objectively* establish MCC's intent not to be bound by the conditions on the reverse of the form, article 8(1) requires a court to consider evidence of a party's subjective intent when the other party was aware of it, and the Silingardi and Copelli affidavits provide that evidence. This is not to say that the affidavits are conclusive proof of what the parties intended. A reasonable finder of fact, for example, could disregard testimony that purportedly sophisticated international merchants signed a contract without intending to be bound as simply too incredible to believe and hold MCC to the conditions printed on the reverse of the contract.[20] Nevertheless, the affidavits raise an issue of material fact regarding the parties' intent to incorporate the provisions on the reverse of the form contract. If the finder of fact determines that the parties did not

---

[20] D'Agostino attempts to explain and undermine the affidavit of its representatives during the transaction, by calling Silingardi a "disgruntled" former employee. Appellee's Br. at 11, 39. Silingardi's alleged feelings towards his former employer may indeed be relevant to undermine the credibility of his assertions, but that is a matter for the finder of fact, not for this court on summary judgment.

intend to rely on those provisions, then the more general provisions of the CISG will govern the outcome of the dispute.[21]

MCC's affidavits, however, do not discuss all of the transactions and orders that MCC placed with D'Agostino. Each of the affidavits discusses the parties' subjective intent surrounding the initial order MCC placed with D'Agostino in October 1990. The Copelli affidavit also discusses a February 1991 requirements contract between the parties and reports that the parties subjectively did not intend the terms on the reverse of the D'Agostino order form to apply to that contract either. See Copelli Aff. ¶ 12. D'Agostino, however, submitted the affidavit of its chairman,

---

[21]  Article 50, which permits a buyer to reduce payment to a seller who delivers nonconforming goods, and article 39, which deprives the buyer of that right if the buyer fails to give the seller notice specifying the defect in the goods delivered within a reasonable time, will be of primary importance. Although we may affirm a district court's grant of summary judgment if it is correct for any reason, even if not relied upon below, see United States v. $121,100.00 in United States Currency, 999 F.2d 1503, 1507 (11th Cir. 1993), and the parties have touched upon these articles in their briefs, they have not provided us with sufficient information to resolve their dispute under the CISG. MCC's affidavits indicate that MCC may have complained about the quality of the tile D'Agostino delivered, but they have provided no authority regarding what constitutes a reasonable time for such a complaint in this context. Accordingly, we decline to affirm the district court's grant of summary judgment on this basis.

Vincenzo Maselli, which describes at least three other orders from MCC on form contracts dated January 15, 1991, April 27, 1991, and May 4, 1991, in addition to the October 1990 contract. See Maselli Aff. ¶ 2, 25. MCC's affidavits do not discuss the subjective intent of the parties to be bound by language in those contracts, and D'Agostino, therefore, argues that we should affirm summary judgment to the extent damages can be traced to those order forms. It is unclear from the record, however, whether all of these contracts contained the terms that appeared in the October 1990 contract.[22] Moreover, because article 8 requires a court to consider any "practices which the parties have established between themselves, usages and any subsequent conduct of the parties" in interpreting contracts, CISG, art. 8(3), whether the parties intended to adhere to the ten day limit for complaints, as stated on the reverse of the initial

---

[22] The Maselli affidavit claims that at the February 4, 1991 contract contained the terms in question, see Maselli Aff. ¶¶ 5-6, but MCC argues that at least some of the forms were never translated into English and, therefore, the record does not reveal whether the terms appear in all the contracts. We leave the resolution of these matters to the district court on remand.

27

contract, will have an impact on whether MCC was bound to adhere to the limit on subsequent deliveries. Since material issues of fact remain regarding the interpretation of the remaining contracts between MCC and D'Agostino, we cannot affirm any portion of the district court's summary judgment in D'Agostino's favor.

## CONCLUSION

MCC asks us to reverse the district court's grant of summary judgment in favor of D'Agostino. The district court's decision rests on pre-printed contractual terms and conditions incorporated on the reverse of a standard order form that MCC's president signed on the company's behalf. Nevertheless, we conclude that the CISG, which governs international contracts for the sale of goods, precludes summary judgment in this case because MCC has raised an issue of material fact concerning the parties' subjective intent to be bound by the terms on the reverse of the pre-printed contract. The CISG also precludes the application of the parol evidence rule, which

would otherwise bar the consideration of evidence concerning a prior or contemporaneously negotiated oral agreement. Accordingly, we REVERSE the district court's grant of summary judgment and REMAND this case for further proceedings consistent with this opinion.