**IMPULS I.D. INTERNACIONAL, S.L., Impuls I.D. Systems, Inc., and Psiar, S.A., Plaintiffs,**

**v.**

**PSION–TEKLOGIX INC., Defendant.**

**No. 01–7541–CIV.**

United States District Court, S.D. Florida.

Nov. 22, 2002.

Paul Huck Jr., Esq, Joel Davidow, Esq., for Defendant.

John P. Kelley, Esq., David F. Nickel, Esq.; for Plaintiffs.

## FINAL ORDER OF DISMISSAL

ZLOCH, Chief Judge.

THIS MATTER is before the Court upon the Defendant, Psion–Teklogix Inc.'s Motion, And Memorandum, For Dismissal Under Rule 12(b)(2), Summary Judgment Under Rule 56(c), Or Dismissal On Forum Non Conveniens Grounds (DE 10). The Court has carefully reviewed said Motion, the entire court file and is otherwise fully advised in the premises. The Court heard oral argument from counsel on May 21, 2002.

### I. *Background*

#### A. *Parties*

The parties in the above-styled cause are as follows. Plaintiff Impuls I.D. Internacional, S.L. (hereinafter "Impuls–Spain") is a Spanish corporation that develops, markets and sells computer products throughout Europe and Latin America. (Compl.¶¶ 5, 13.) Plaintiff Psiar, S.A. (hereinafter "Psiar") is an Argentine corporation that distributes computer products in Argentina. (Compl.¶¶ 7, 10.)

Plaintiff Impuls I.D. Systems, Inc. (hereinafter "Impuls–US") is a Florida corporation that is responsible for distributing products for Impuls–Spain throughout Latin America. (Compl.¶¶ 6, 14.) The Court will refer to the Plaintiffs collectively as "the Plaintiffs," or individually as necessary.

The Defendant, Psion–Teklogix, Inc. (hereinafter "the Defendant") is an Ontario-based Canadian corporation. (DE 10, Def's Mots. And Mem. For Dismissal Under Rule 12(b)(2), Summ. J. Under Rule 56(c), Or Dismissal On Forum Non Conveniens Grounds, Conway Aff. ¶ 2.) The Plaintiffs' Complaint alleges that the Defendant is a Delaware corporation with its principle place of business in Kentucky. (Compl.¶ 8.) However, the Kentucky-based corporation is a subsidiary of the Defendant, not the Defendant. (DE 10, Conway Aff. ¶¶ 6–7.)

#### B. *The Facts*

The above-styled cause arises out of an alleged oral contract (hereinafter the "contract") entered into by Impuls–Spain and Psiar, on the one hand, and Psion PLC and Psion Enterprise Computing, Ltd., on the other hand, on June 21, 2000. Psion PLC is the British parent company of Psion Enterprise Computing, Ltd., also a British company. Neither Psion PLC nor Psion Enterprise Computing, Ltd. is a defendant in the above-styled cause.

Prior to June 21, 2000 Impuls–Spain developed, marketed and sold computer products in Latin America. Due to its desire to expend its business, Impuls–Spain became interested in purchasing the assets of Psiar. Impuls–Spain's business plan was to merge with Psiar to distribute certain computer products manufactured by Psion PLC and Psion Enterprising Computing, Ltd. throughout Latin America. To this end, the President of Psiar and the Executive Vice–President of Im-

puls–Spain met with representatives of Psion PLC and Psion Enterprise Computing, Ltd. in London, England on June 21, 2000. The Plaintiffs allege that they proposed their business plan to Psion PLC and Psion Enterprising Computing, Ltd., wherein the Plaintiffs would purchase computer merchandise from Psion Enterprising Computing, Ltd. to be distributed throughout Latin America. Central to the Plaintiffs' business plan was the arrangement that all merchandise bought by the Plaintiffs would be delivered to Impuls–US in Fort Lauderdale. Under the contract, Psiar would place orders with Psion Enterprising Computing, Ltd., and then the computer products would be shipped to Impuls–US in Florida. From Florida, the computer products would be distributed throughout Latin America. The Plaintiffs further allege that from July 2000 until December 2000, Psion Enterprising Computing, Ltd. followed the provisions of the contract and merchandise was shipped to Impuls–US in Florida.

In September 2000, Psion PLC acquired Teklogix, Inc., a Canadian company, which became the Defendant, Psion Teklogix, Inc. In December 2000, the Plaintiffs received an e-mail communication from Mr. Mike Rose, President of the Defendant informing them that all contracts would be terminated in ninety (90) days and that the Defendant was reorganizing its distribution plan. The Plaintiffs explained that this strategy was unacceptable because it would destroy their business plan. The Defendant offered the Plaintiffs the option of continuing as a reseller, which the Plaintiffs refused. Believing that the actions of the Defendant constituted a breach of the contract reached on June 21, 2000, the Plaintiffs filed suit in the United States District Court for the Southern District of Florida.

## C. The Counts

The Court notes that for purposes of the discussion below it is necessary to describe each individual count of the Complaint. In Count I, Impuls–Spain and Psiar allege breach of contract against the Defendant. In Count II, Impuls–US alleges breach of contract against the Defendant. In Count III, Impuls–Spain and Psiar assert promissory estoppel against the Defendant.

## II. Discussion

At the outset, the Court notes that "[j]urisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). Therefore, the Court will address the question of its jurisdiction over the above-styled cause before proceeding to the other issues raised by the parties.

## A. Subject Matter Jurisdiction

### 1. Federal Question Jurisdiction

The Plaintiffs allege that this Court has subject matter jurisdiction over the above-styled cause pursuant to 28 U.S.C. § 1331 in that the above-styled cause arises under a treaty of the United States. (Compl.¶ 1.) Specifically, the Plaintiffs allege that the above-styled cause arises under the United Nations Convention on Contracts for the International Sale of Goods because all the parties to the contract have their places of business in Contracting States. United Nations Convention on Contracts for the

International Sale of Goods, *opened for signature* April 11, 1980, S. Treaty Doc. No. 9, 98th Cong., 1st Sess. 22 (1983), 19 I.L.M. 671, *reprinted at,* 15 U.S.C. app. 52 (1997) (hereinafter the "CISG"); *see* Compl. ¶ 3.[1] A "Contracting State" is a country that has become a party to the CISG. The United States, Spain, Argentina, and Canada are all Contracting States. The United Kingdom, however, is not a Contracting State. The Defendant contends that the CISG does not apply and that there is no federal question present in the above-styled cause because the contract was entered into by Psion PLC and Psion Enterprise Computing, Ltd., both of which have their places of business in the United Kingdom, a non-Contracting State. The Defendant further contends that subsequent changes of parties to the contract cannot render the CISG applicable.

■ The Court notes that "[i]n construing a treaty, as in construing a statute, [courts] first look to its terms to determine its meaning." *United States v. Alvarez–Machain,* 504 U.S. 655, 663, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992). Article 100 of the CISG states that "[t]his Convention applies to the formation of a contract only when the proposal for concluding the contract is made on or after the date when the Convention enters into force in respect of the Contracting States referred to in subparagraph (1)(a) or the Contracting State referred to in subparagraph (1)(b) of article 1." CISG, art. 100(1). As noted above, the "proposal for concluding" the contract was made on June 21, 2000 in London, England between Impuls–Spain, a Spanish corporation, Psiar, an Argentine corporation, and both Psion PLC and Psion Enterprise Computing, Ltd., each of which are corporations of the United Kingdom. The United Kingdom was not a signatory to

the CISG at the time "when the proposal for concluding the contract" was formulated. Therefore, the language of Article 100 supports the Defendant's contention that the contract in question here is not governed by the CISG.

■ The Court finds further support for the contention that the CISG does not apply from Article 1(2) of the CISG. Article 1(2) states that "[t]he fact that the parties have their places of business in different States is to be disregarded whenever this fact does not appear either from the contract or from any dealings between, or from information disclosed by, the parties at any time before or at the conclusion of the contract." CISG, art. 1(2). Therefore, to the extent that the Defendant, a Canadian corporation located in a Contracting State, is now a party to the contract is a fact that "is to be disregarded" because it was not known to the parties "at any time before or at the conclusion of the contract." In other words, what the parties knew when they concluded the contract of June 21, 2000 was that the United Kingdom was not a signatory to the CISG and that the CISG would not apply. *See* John O. Honnold, *Uniform Law for International Sales under the 1980 United Nations Convention* § 41 at 76 (2d ed.1991) (hereinafter Honnold, *Uniform Law* ).

Based upon a careful reading of the terms of the CISG, the Court finds that it does not govern the contract.

■ Next, the Court notes that it may also look at the "history of negotiation and practice" under the CISG to determine whether it governs the contract. *Alvarez–Machain,* 504 U.S. at 665, 112 S.Ct. 2188; *see also Bishop v. Reno,* 210 F.3d 1295, 1299 (11th Cir.2000) ("In construing treaties, 'we may look beyond the written

---

1. Helpful information regarding the CISG can be found at the following website: http:// cisg3.law.pace.edu.

words to the history of the treaty, the negotiations, and the practical construction adopted by the parties.'") (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988)). Here, the Court notes that the development of the CISG can be traced back to the 1964 Hague Conventions. *See* Honnold, *Uniform Law,* § 4 at 49. The 1964 Hague Conventions adopted a "universalist" approach which sought to apply the rules of the Convention to international sales regardless of whether the parties had contact with a Contracting State. *Id.,* § 15 at 59. This "universalist" approach was specifically rejected by the CISG, however, in favor of Article 1, which states that the CISG will apply only to contracts between parties whose places of business are in Contracting States. *Id.,* § 45 at 82. Therefore, the Court finds no support for the proposition that the contract at issue here should be governed by the CISG when the negotiations leading up to the CISG specifically rejected a "universalist" approach to its application.

Moreover, the Court notes that the United States, pursuant to Article 95 of the CISG, ratified the CISG with the following declaration: "Pursuant to article 95 the United States will not be bound by subparagraph (1)(b) of Article 1." CISG, app. B. Subparagraph (1)(b) allows for the application of the CISG when a party is not from a Contracting State. The United States specifically rejected being bound by subparagraph (1)(b). Therefore, the only circumstance in which the CISG could apply is if all the parties to the contract were from Contracting States. But as noted above, both Psion PLC and Psion Enterprise Computing, Ltd. were from the United Kingdom, a non-Contracting State.

Finally, the Court notes that it has found no case law supporting the proposition that a contract entered into by a party in a non-Contracting State is governed by the CISG when a subsequent party to the contract located in a Contracting State allegedly breaches the contract. Rather, the cases found by this Court all show that the CISG applied because the original parties to the contract had their places of business in Contracting States. *See e.g., MCC–Marble Ceramic Center, Inc. v. Ceramica Nuova d'Agostino, S.p.A.,* 144 F.3d 1384, 1386 (11th Cir.1998) ("The parties to this case agree that the CISG governs their dispute because the United States, where MCC has its place of business, and Italy, where D'Agostino has its place of business, are both States Party to the Convention.") (footnote omitted).

Based upon a reading of the CISG, the history of negotiation and practice under the CISG, as well as oral argument of counsel and the papers submitted by the parties, the Court finds that the CISG does not govern the contract at issue here and that there is no federal question present in the above-styled cause.

## 2. *Diversity Jurisdiction*

The Plaintiffs also assert that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the above-styled cause is between citizens of different states and foreign states and the amount in controversy exceeds $75,000.00. (Compl.¶ 2.) Here, the Court notes that the only applicable subsection of 28 U.S.C. § 1332 is § 1332(a)(2). This is so because the above-styled cause, which has as the only Defendant a Canadian corporation, is not a civil action between "citizens of different States and in which citizens or subjects of a foreign state are additional parties ...." *See* 28 U.S.C. § 1332(a)(3). Simply put, there are not citizens of different "States" on both sides of this action. Rather, it is a civil action between a "citi-

zen[ ] of a State and citizens or subjects of a foreign state ...." *See* 28 U.S.C. § 1332(a)(2). Therefore, the only applicable statutory provision is 28 U.S.C. § 1332(a)(2). *See Dresser Indus., Inc. v. Underwriters at Lloyd's of London,* 106 F.3d 494, 498–99 (3rd Cir.1997) (analyzing the distinction between the applicability of § 1332(a)(2) and § 1332(a)(3) in suits where aliens are present on both sides of an action).

■ Next, the Court notes that under Article III of the United States Constitution, the judicial power of the United States extends "to Controversies ... between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." U.S. CONST. art. III, § 2. Article III of the United States Constitution "requires only minimal diversity, that is, diversity of citizenship between any two parties on opposite sides of an action, regardless of whether other parties may be co-citizens." *Saadeh v. Farouki,* 107 F.3d 52, 54 (D.C.Cir.1997). However, Congress has never granted the federal courts the full measure of diversity jurisdiction allowed under the Constitution, and the Supreme Court has construed the diversity statutes to require complete diversity. *Id.; see also Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806). Therefore, if complete diversity is lacking, a federal court does not have subject matter jurisdiction over an action pursuant to 28 U.S.C. § 1332. *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998).

■ In *Ruhrgas AG,* the Supreme Court noted that the presence of an alien on both sides of an action renders diversity incomplete. *Ruhrgas AG,* 526 U.S. at 580 n. 2, 119 S.Ct. 1563. In *Ruhrgas AG,* the plaintiffs were two Texas corporations and a Norwegian corporation. *Id.* at 578 n. 1, 119 S.Ct. 1563. The defendant was a German corporation. *Id.* The plaintiffs origi-

nally filed suit in a Texas state court and the defendant removed the case to federal court based upon diversity jurisdiction, federal question jurisdiction, and pursuant to 9 U.S.C. § 205. The Supreme Court noted that diversity jurisdiction did not lie because "[t]he foreign citizenship of defendant Ruhrgas, a German corporation, and plaintiff Norge, a Norwegian corporation, rendered diversity incomplete." *Id.* at 580 n. 2.

■ Applying *Ruhrgas AG* to the above-styled cause, the Court finds that complete diversity is lacking and that this Court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Here, the Plaintiffs include Impuls–US, a Florida corporation, as well as two foreign corporations, Impuls–Spain, a Spanish corporation, and Psiar, an Argentine corporation. The Defendant is a Canadian corporation. The position of the parties in the above-styled cause is essentially the same as the parties in *Ruhrgas AG;* that is, there are foreign corporations on both sides of the above-styled cause. Therefore, the Court finds that complete diversity is lacking and that this Court lacks diversity jurisdiction. *See Wis. Dep't of Corr. v. Schacht,* 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) ("The presence of the nondiverse party automatically destroys original [diversity] jurisdiction ...."); *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1557 (11th Cir.1989) (stating that "the presence of at least one alien on both sides of an action destroys diversity"); *State Establishment For Agric. Prod. Trading v. M/V Wesermunde,* 770 F.2d 987, 991 n. 4 (11th Cir.1985) (noting that presence of alien defendant destroys complete diversity); *Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.,* 506 F.2d 757, 758 (5th Cir.1975) (finding no diversity jurisdiction when alien sued citizen of a state and an alien); *Int'l Shipping Co. S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 391 (2d Cir.1989) (stat-

ing that general rule requiring complete diversity "[c]learly ... applies in cases where aliens appear on both sides of a case"); *Simon Holdings PLC Group of Cos. U.K. v. Klenz*, 878 F.Supp. 210, 211 (M.D.Fla.1995) ("Complete diversity does not exist where there are aliens on both sides of the litigation ... even if the aliens are from different countries.").

Moreover, the Court finds that the presence of one diverse claim in the Complaint is not sufficient for purposes of diversity jurisdiction. Specifically, Count II alleges breach of contract between Impuls–US, a Florida corporation, and the Defendant, a Canadian corporation. However, 28 U.S.C. § 1332(a) "speaks in terms of the diversity of 'civil *actions*'—it is not enough that ... total diversity may exist as to fewer than all of a plaintiff's claims, if they are joined with at least one nondiverse claim." *Controlled Env't Sys. v. Sun Process Co., Inc.*, 936 F.Supp. 520, 521 (N.D.Ill.1996); *see also Schacht*, 524 U.S. at 389, 118 S.Ct. 2047 ("Where original jurisdiction rests upon Congress' statutory grant of 'diversity jurisdiction,' this Court has held that one claim against one nondiverse defendant destroys that original jurisdiction."); *cf. Williams v. Conseco, Inc.*, 57 F.Supp.2d 1311 (S.D.Ala.1999) (complete diversity existed because there were no nondiverse claims in the complaint). Here, both Counts I and III are nondiverse claims because they are between foreign alien corporations, Impuls–Spain and Psiar on the one hand, and the Defendant on the other. These Counts destroy complete diversity.

The Court does note that there exists an exception to the rule of complete diversity: "a court may ignore the citizenship of a plaintiff which has an independent basis of original federal jurisdiction against the defendant." *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1564 (11th Cir.1994) (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959)). The logic behind this exception is that a court may ignore the citizenship of the nondiverse party because that party is "properly before the court on a separate ground of original federal jurisdiction." *Id.* at 1565. Here, however, the Court's prior finding that no federal question is present precludes the application of this exception. "[T]o meet the *Romero* exception, the non-diverse party must have an independent ground of *original* federal jurisdiction." *Id.* at 1565 (emphasis in original). Here, Impuls–Spain and Psiar have no independent ground of original federal jurisdiction. Therefore, the exception does not apply and complete diversity is lacking.

### III.  *Conclusion*

In conclusion, the Court finds that it does not have subject matter jurisdiction over the above-styled cause. Therefore, the Court will not address any other issues raised by the parties. Indeed, to do so would be improper. As noted above, "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) at 514.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. The above-styled cause is hereby DISMISSED without prejudice in that this Court lacks jurisdiction over the subject matter of the above-styled cause; and

2. To the extent not otherwise disposed of herein, all pending Motions are hereby DENIED as moot.