**F I L E D**
United States Court of Appeals
Tenth Circuit

MAR 17 1997

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BETTY BROWN and ROGER BROWN,
her husband,

      Plaintiffs-Appellants,

v.

UNIROYAL, INC., UNIROYAL
GOODRICH TIRE CO.,

      Defendants-Appellees,
          and

UNIROYAL GOODRICH CANADA,
INC., UNIROYAL CHEMICAL LTD./
UNIROYAL LTEE.,

      Defendants.

No. 96-7007

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CV-94-185)**

---

Bruce W. Pitzer**,** Sarasota, Florida, for the Plaintiffs-Appellants**.**

George D. Davis, McKinney, Stringer & Webster, P.C., Oklahoma City, Oklahoma, for
the Defendants-Appellees.

---

Before **TACHA**, Circuit Judge, **BALDOCK,** Circuit Judge, and **MCWILLIAMS**,
Senior Circuit Judge.

---

**McWILLIAMS, Senior Circuit Judge.**

---

Betty Brown was employed by Uniroyal, Inc. at its tire plant in Ardmore, Oklahoma, sometime prior to 1984. On October 27, 1985, Uniroyal, Inc. transferred its interest in the plant and equipment to a separate corporation, Uniroyal Goodrich Tire Co., Inc. On May 22, 1986, Betty Brown was injured on the job by a tire-making machine at the plant, her right arm having been caught in the machine and twisted off below the elbow.

On January 14, 1988, Betty Brown and her husband, Roger Brown, filed a negligence and products liability action in the United States District Court for the Eastern District of Oklahoma, naming as defendants two Canadian corporations, Uniroyal Goodrich Canada, Inc. and Uniroyal Chemical Ltd./Uniroyal Ltee. At that time, the Browns apparently believed that the two Canadian corporations had designed and manufactured the machine which injured Betty Brown.[1] Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332 (a)(2).

On March 1, 1989, the Browns, based upon information apparently gained from the deposition of one David O'Boyle, Assistant General Counsel for Uniroyal Holdings,

---

[1]In their brief, the Browns state that their decision to bring suit against the two Canadian corporations was based upon information which Roger Brown, Betty Brown's husband, who was a plant maintenance employee at Uniroyal Goodrich Tire Co., took from the maintenance computer of the machine which injured Betty Brown.

Inc., taken on February 21, 1989, filed a motion under Fed. R. Civ. P. 15 to add Uniroyal, Inc. as a party defendant. In that motion, the Browns alleged that discovery had revealed that the subject machine which injured Betty Brown was "in all probability" designed by James D. Schnarr, an employee of Uniroyal, Inc. in Opelika, Alabama. Designated as the defendants in that motion were Uniroyal Goodrich Canada, Inc. and Uniroyal Chemical Ltd./Uniroyal Ltee., a subsidiary of Uniroyal Tire, Inc. The Browns' motion to add Uniroyal, Inc. as a party defendant was opposed by the two Canadian corporations on the grounds that to add Uniroyal, Inc. as a defendant at such a late date would constitute "needless delay" to disposition of the Browns' action against them. The two Canadian defendants also alleged that any claim of the Browns against Uniroyal, Inc. was time-barred by Oklahoma's two year statute of limitations, 12 O.S. § 95(3), since the "relation back" doctrine in Fed. R. Civ. P. 15(c) was not applicable to the case.[2]

On May 2, 1989, the district court denied the Browns' motion to add Uniroyal, Inc. as a defendant. In so doing, the district court noted that the motion to add Uniroyal, Inc. as a defendant was filed more than two years after Betty Brown's accident and that accordingly, but for an application of the "relation back" doctrine, any claim by the

---

[2]The record before us does not indicate that Uniroyal, Inc., which was not identified as a defendant in the motion to add Uniroyal, Inc. as a defendant, made any appearance of any sort in connection with the Browns' motion to add it as a defendant. Rather, it was the two Canadian corporations which opposed the Browns' motion to add Uniroyal, Inc. as a defendant. All parties in the present proceeding have, at times, referred to the four corporate entities as being one.

Browns against Uniroyal, Inc. would be time-barred by Oklahoma's two year statute of limitations. 12 0.S. § 95(3). However, the district court recognized that under Fed. R. Civ. P. 15(c) if a claim asserted in an amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment may relate back to the date of the original pleading, which would bring Uniroyal, Inc. within the two year statute of limitations.

The district court then went on to further note that Rule 15(c) also provides that where an amendment would add a party, as here, "relation back" would only occur if, *inter alia*, the party to be brought in by amendment "has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits." In this connection, the district court quoted from *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986), where the Supreme Court spoke as follows:

> Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

In denying the motion to add Uniroyal, Inc. as a defendant, the district court observed that Uniroyal Chemical Ltd./Uniroyal Ltee. had admitted in its pleadings that it "is a subsidiary of Uniroyal, Inc.," though there had been no showing that it was a

"wholly owned subsidiary." (emphasis in original). The district court also noted that the Browns asserted that Uniroyal Chemical Ltd./Uniroyal Ltee. and Uniroyal, Inc. had the same agent for service of process, which the defendants apparently denied. The district court then concluded that the Browns had failed to demonstrate that they had met the second criteria set out in *Schiavone*, i.e., that Uniroyal, Inc. had "received such notice that it will not be prejudiced in maintaining its defense." It was on this basis that the district court denied the Browns' motion to add Uniroyal, Inc. as a defendant.

On August 14, 1989, the district court entered summary judgment for the two Canadian corporations and the Browns appealed this order as well as the order denying their motion to add Uniroyal, Inc. as a party defendant.

On appeal, this court in an unpublished order and judgment affirmed the judgment of the district court in its entirety. *Brown, et al. v. Uniroyal Goodrich Canada, Inc.,* No. 89-7087 (10th Cir. Jan. 28, 1991) (hereinafter Brown I). In so doing, we concurred "in the district court's determinations . . . for substantially the reasons set forth in the district court's orders entered on May 2, 1989, and August 14, 1989." A petition for rehearing en banc in Brown I was denied on March 1, 1991.

Some three years later, on March 28, 1994, the Browns filed an action in the United States District Court for the Eastern District of Oklahoma against Uniroyal, Inc., Uniroyal Goodrich Tire Co., and the two Canadian corporations. A copy of that complaint is not in the record before us, though the defendants' answer thereto is in the

record. That action apparently was based on Fed. R. Civ. P. 60(b), i.e., an action seeking relief from the judgment entered in Brown I based on fraud on the court (hereinafter Brown II). In their brief, the Browns assert that in resisting their motion to add Uniroyal, Inc. as a party defendant, Uniroyal, Inc. committed a fraud on the court and deceived the court by claiming that it did not have "notice" of their suit against the two Canadian corporations and, therefore, would be prejudiced if forced into an early trial since it had not taken part in discovery or investigation.[3]

Brown II was assigned to the Honorable Frank Seay, a United States District Judge for the Eastern District of Oklahoma. On May 15, 1994, the defendants filed a motion to reassign the case to the Honorable H. Dale Cook, Judge Cook having been the presiding judge in Brown I. On June 15, 1994, the case was reassigned to Judge Cook.

After discovery, the defendants moved for summary judgment, and on January 25, 1995, Judge Cook granted partial summary judgment in favor of all defendants. Specifically, Judge Cook entered judgment as follows:

> 1. granted the motion of Uniroyal Goodrich Canada, Inc. and Uniroyal Chemical, Ltd./Uniroyal Ltee. for summary judgment "as to all claims of the plaintiffs."
>
> 2. granted the motion of Uniroyal, Inc. and Uniroyal Goodrich Tire Co. "as to all claims except any claims to reopen the case assigned Docket Number 88-020-C

---

[3]In their brief, the Browns stated that they first found out that Uniroyal, Inc. had committed a fraud on the court in Brown I in subsequent related proceedings in the Oklahoma state courts.

[Brown I] in this court on account of the allegedly false statements made by defendants regarding notice to Uniroyal, Inc. and whether Uniroyal, Inc. had an adequate opportunity to participate in discovery that were made in papers filed in opposition to the plaintiffs' motion to amend their complaint to add Uniroyal, Inc. as a party in Docket No. 88-020-C."

In his order of the same date, which explains his judgment, Judge Cook noted that in their complaint the Browns alleged that "Uniroyal, Inc., through its attorneys, fraudulently represented to this court:

(1) Uniroyal, Inc. would be prejudiced by being subjected to trial in a matter of weeks without ever having had a direct interest in the investigatory and discovery process.

(2) Neither of the named defendants were wholly owned subsidiaries of Uniroyal, Inc.

(3) Uniroyal, Inc. had never received "real notice" of the commencement of the action.

(4) That plaintiffs had admitted David O'Boyle was not a Uniroyal, Inc. employee.

(5) That plaintiffs made a voluntary and conscious decision to do nothing to add Uniroyal, Inc. when they learned of the link between Uniroyal, Inc. and the design of the machine.

(6) Uniroyal, Inc. had not had any legal interest in the outcome of the litigation."

Judge Cook granted summary judgment in favor of the defendants as to the Browns' contentions contained in paragraphs 2, 4, 5 and 6. Judge Cook declined to grant summary judgment on the contentions made in paragraphs 1 and 3 because there was a pending motion of the Browns for discovery which conceivably could affect the resolution thereof.

- 7 -

On January 25, 1995, Judge Cook also ordered that Uniroyal Goodrich Tire Co. provide the Browns with certain documents requested by them, and at the same time ordered that other documents requested by the Browns be given to the court for *in camera* review to determine whether such were so confidential as to preclude disclosure to the Browns. On June 12, 1995, Judge Cook ordered that the documents which had been turned over to him by Uniroyal Goodrich Tire Co. for *in camera* review should be "produced to the plaintiffs in their entirety." In his order of January 25, 1995, Judge Cook had stated that the defendants could renew their motion for summary judgment "as to any unresolved claims within 20 days of the date on which plaintiffs are provided with their requested documents." Within that time limit, the defendants filed a renewed motion for summary judgment, to which the Browns filed a response.

In their brief in support of the renewed motion for summary judgment, the defendants asserted that the "bills and letters" given to the Browns by the defendants under order of court did not constitute any evidence of fraud on the court by any defendant and that "Uniroyal, Inc.'s 'knowledge' and 'investigation' of the Betty Brown accident was in the context of possible employer liability only." As indicated, Uniroyal, Inc. had transferred its interest in the plant at Ardmore, Oklahoma, to Uniroyal Goodrich Tire Co., a separate and distinct corporation, a few months before the accident, and Uniroyal, Inc. was concerned about the "dual capacity" doctrine which might possibly make Uniroyal, Inc. liable to Betty Brown for worker's compensation benefits.

In their response to defendants' renewed motion for summary judgment, and in their supporting brief, the Browns complained about the "confusion" caused by the similarity in the corporate names of the four defendants and concluded by stating that "[a]ll of the assertions in question were made directly to the court with the purpose of influencing this court [and] [t]he summary judgment should be denied."

The defendants filed a reply to the Browns' response in which they claimed, *inter alia,* that the Browns were arguing matters that were outside the scope of the issues to be resolved by Judge Seay, as set forth in Judge Cook's order of January 25, 1995.

On October 13, 1995, Brown II was reassigned back to Judge Seay, who, on December 19, 1995, granted the defendants' renewed motion for summary judgment on the claims not disposed of by Judge Cook in his order of January 25, 1995. In so doing, Judge Seay held, in essence, that there was an insufficient showing that Uniroyal, Inc. had committed any fraud on the court in connection with the Browns' attempt to add Uniroyal, Inc. as a party defendant in Brown I a few weeks before trial. Specifically, Judge Seay concluded that there was an insufficient showing that prior to the motion to add it as a defendant in Brown I, Uniroyal, Inc. had notice that it had any sort of liability to the Browns, except possible liability under local Oklahoma worker's compensation law, nor had it participated, as such, in discovery in Brown I. In the same general connection, Judge Seay held that there was no showing by the Browns that in resisting their motion to add Uniroyal,

Inc. as a defendant there was any intent on the part of Uniroyal, Inc. to deceive or defraud the court.

The Browns have appealed Judge Seay's order and judgment of December 19, 1995. The Browns have not appealed Judge Cook's order and judgment of January 25, 1995, which, *inter alia*, dismissed all claims against the two Canadian corporations, Uniroyal Goodrich Canada, Inc. and Uniroyal Chemical Ltd./Uniroyal Ltee.[4]  We affirm.

We regard the issue to be decided in this appeal to be a very narrow one.  As indicated, the Browns have not appealed any part of the order and judgment entered by Judge Cook on January 25, 1995.  By that order and judgment only one matter remained to be resolved, namely, whether Uniroyal, Inc., through its attorneys, fraudulently represented to the court that "Uniroyal, Inc. would be prejudiced by being subjected to trial in a matter of weeks without ever having had a direct interest in the investigatory and discovery process" and that "Uniroyal, Inc. had never received 'real notice' of the commencement of the action," thereby committing fraud on the court.  In this regard, Judge Seay in his order and judgment of December 19, 1995, after considering, *inter alia,* the documents produced in connection with the Browns' motion to produce, concluded that there was an insufficient showing by the Browns of any intent by Uniroyal, Inc., or any other entity for that matter, to deceive or defraud the court in Brown I.  We agree.

---

[4]Neither of the two Canadian corporations is an appellee in the present proceeding.

Under Fed. R. Civ. P. 60(b), a motion to set aside a final judgment on the ground of fraud, misrepresentation or other misconduct of an adverse party must be filed within one year after the judgment was entered. Brown II was not filed within one year after Brown I. However, that same rule goes on to provide as follows:

> This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or preceding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. § 1655, or to set aside a judgment for fraud on the court.[5]

It would appear that the Browns' present action is brought pursuant to the above quoted portion of Fed. R. Civ. P. 60(b).

The parties apparently agree that if the case were to go to trial, the Browns, in order to prevail, would have to prove fraud by clear and convincing evidence. In *Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238 (10th Cir. 1990), we held that the "clear and convincing" standard should be considered in determining whether a defendant's motion for summary judgment should be granted on a plaintiff's claim of fraud. In so holding, we stated as follows:

> The Supreme Court has held that "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." The Court in *Liberty Lobby* specifically held that the clear and

---

[5]28 U.S.C. § 1655 concerns "absent defendants" in a "lien enforcement" proceeding where the defendant has not been "personally notified," and, accordingly, it would appear to have no applicability to the present case.

convincing standard of proof required in that libel action "should be taken into account in ruling on summary judgment motions." Therefore, because Wyoming law requires clear and convincing proof of fraud, we will review the grant of summary judgment on the issue of fraud in light of that standard. ("Against the backdrop of a motion for summary judgment, fraud must be demonstrated in a clear and convincing manner.")

*Applied Genetics*, 912 F.2d at 1243 (citations omitted).

In *Bulloch v. United States*, 763 F.2d 1115 (10th Cir. 1985), we reversed a district court's order which set aside a judgment previously entered in favor of the United States on the ground that the United States had perpetuated a fraud on the court. In so doing, we spoke as follows:

This case demonstrates the very good reasons why judgments should be final and should not be disturbed. The plaintiffs to prevail must have shown by clear and convincing evidence that there was fraud on the court, and all doubts must be resolved in favor of the finality of the judgment.

\* \* \* \* \*

Fraud on the court (other than fraud as to jurisdiction) is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court. It is thus fraud where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function--thus where the impartial functions of the court have been directly corrupted.

*Bulloch,* 763 F.2d at 1121 (citations omitted).

To like effect, *see Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259 (10th Cir. 1995). In *Robinson*, we affirmed a district court's judgment denying a motion by the plaintiffs, who as motorists had brought a products liability action against the manufacturer of their vehicle, to set aside a judgment for the manufacturer on the ground that the manufacturer and its counsel had committed fraud on the court. In so doing, we spoke as follows:

> Any request to set aside a judgment must be viewed in light of a fundamental principle of the finality of duly entered judgments: namely, where a reasonable opportunity has been afforded to the parties to litigate a claim before a court having jurisdiction, and the court has finally decided the controversy, the interests of the public and of the parties require that the validity of the claim and any issue actually litigated in the action shall not be litigated again by them. One long-recognized exception to the general rule of finality is where a judgment was based on a claim that the party obtaining the judgment knew it to be fraudulent. Historically, this exception was said to apply, however, only when the fraud was so successful that the other party was not even aware that he had a possibility of a claim or defense. By contrast, relief was not available--even in the case of an erroneous and inequitable judgment--on the sole ground that the judgment was obtained by perjured testimony or that the complainant failed to maintain his action because of a non-fraudulent misrepresentation as to the facts by the other party.

*Robinson,* 56 F.3d at 1265-66 (citations omitted).

Under the rationale of such cases as *Robinson* and *Bulloch*, we conclude that Judge Seay did not err in concluding that, on the basis of the record before him, the Browns did not demonstrate that Uniroyal, Inc. or Uniroyal Goodrich Tire Co. had committed a fraud on the

court.[6]  As far as we can tell from the record before us, neither Uniroyal, Inc. nor Uniroyal

Goodrich Tire Co., the only appellees in the present proceeding, made <u>any</u> representation,

as such, to the court in Brown I.

Judgment affirmed.

---

[6]We reject any suggestion that the judgment entered by Judge Seay on December 19, 1995, is somehow at odds with Judge Cook's judgment of January 25, 1995.